### 12626.  DOLLAR *v.* THE STATE.

A conviction of cheating and swindling, under the "labor-contract law" (Penal Code of 1910, §§ 715 et seq.), was not authorized by the evidence.

      Decided November 16, 1921.

Accusation of cheating and swindling; from city court of Eastman — Judge Franklin. June 16, 1921.

Advancements to the defendant, consisting of a coffin for burial of his father (who had been killed by the prosecutor's brother), and of 50 cents and $1.50, and meat and flour of the value of $3.60, were made by the prosecutor, according to his testimony, "on the strength of" a contract of the defendant to perform services for him as a cropper, and the services contracted for were not performed and the advancements were not repaid. The accusation charged that the defendant made the contract fraudulently, with intent to procure money or other thing of value thereby and not to perform the services contracted for, and procured these advancements intending not to perform the services, and, without good and sufficient cause, failed and refused to perform the services or to return the money. The defendant denied the alleged contract, and said that he left the defendant's premises because the killing of his father, and other conduct stated, made him afraid to stay there.

The prosecutor, L. M. Coffee, testified: that on November 20, 1920, Tom Dollar, the defendant, contracted with him to perform services for him in operating as a cropper, "on halves," a described one-horse farm on which the defendant lived in the year 1920, the service to begin on January 1, 1921, and to continue during the entire year 1921, the prosecutor to furnish the land and other specified things, and the defendant to furnish a half of the fertilizer and the labor to make and harvest the crops, and to receive as compensation a half of the crops or their proceeds, after repayment of advances; that subsequently, on given dates in November and December, 1920, the advancements mentioned above were made; that no part of the work contracted for was done, and no part of the advancements was repaid by the defendant. On cross-examination the prosecutor testified: "The coffin I let him have was for the burial of his father. His father was killed by my brother, Arthur Coffee, while deceased was a tenant on my place. My father, my brother Arthur, my other brothers, and I all work our farms practically all together. I do not know what month it was that Tom Dollar's father was killed by my brother, . . whether or not it was November, . . October, . . or . . September. It was some time last year [1920], . . not as late as December. I gave defendant that memorandum that he has there, showing what he owed me on the 11th of December, 1920, just as it is written. I told him he could get up the money and pay me, and it would be all right."

Rogers, a witness for the State, testified, that Tom Dollar came to his place about January 1, 1921, and wanted to hire to him, Dollar saying that he was in debt to Mr. L. M. Coffee and wanted the witness to pay the debt and let him work it out; that the witness went to Coffee's place to see him about taking up what "these Dollar negroes" owed him, and found it was more than he was willing to "put into them;" that Coffee told him that Tom Dollar owed half of the sum owing on the coffin, and Tom's brother owed the other half, making $55 for the two, but Coffee would not accept payment of a half of the debt when the witness offered it to him; that Coffee and his father and brothers afterwards came to the home of the witness, looking for Tom Dollar, and when Tom saw them coming towards him

he turned loose the plow-handles and ran, and they did not then catch him; that Coffee then told the witness that Tom must either pay the debt or go back with them and work; the witness would not swear that the Coffees said they would kill Tom if he failed to do so, or that they did not say so. There was other testimony to the effect that the defendant had admitted that he contracted to work for the prosecutor for the year 1921.

The defendant, in his statement at the trial, said: "All that was ever said about my working for Mr. Coffee during the year 1921 was said in October, 1920. I told Mr. Coffee that I thought I would work for him another year. After that, in December, they killed my daddy, and I got scared to stay there. They asked me about paying for the coffin to bury my daddy in. I told them that I reckoned I would have to pay for it, though it seemed that I oughtn't to have to pay for it, as they had killed my daddy. I was to pay for half of it and my brother was to pay for the other half. In a few days after my daddy was killed, the day the coffin was bought, I think, I went to Mr. Coffee and asked him to give me a statement of my account. He gave it to me. I told him that I would go and try to get him his money. I told him that I was afraid to stay there after they had killed my daddy. I told him that my family wouldn't stay even if I wasn't scared, as they were scared to live there any longer. One reason I was scared to stay there was that Mr. L. M. Coffee and his brothers, . . a few days before they killed my daddy, . . had made one of Mr. Skelton's hands, Gus Brunswick, . . haul his things back to Mr. Coffee's place, where he had been living, and had whipped Gus. I was just scared to stay there any longer, after they had killed my daddy. I tried to get Mr. Coffee his money, but I couldn't."

*M. J. Carswell,* for plaintiff in error.

*D. D. Smith, solicitor, W. A. Wooten,* contra.

LUKE, J. The defendant was accused and convicted of the offense of violating the "labor-contract law." Penal Code (1910), § 715 et seq. The evidence was insufficient to authorize the conviction. It was error, for this reason, to overrule the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*